[Civ. No. 3749. Third Appellate District.—April 12, 1929.]

L. E. LEPPER et al., Appellants, v. IRA C. RATTERREE, Respondent.

[Civ. No. 3750. Third Appellate District.—April 12, 1929.]

LERA CLARK, Appellant, v. IRA C. RATTERREE, Respondent.

246

Hoye & Boehler for Appellants.

Frank G. Falloon for Respondent.

PLUMMER, J.—The above cases relate to the entering into contracts for the purchase of two lots situate in Ratterree's Washington Boulevard Tract Number 6256, city of Los Angeles. The cases were consolidated for trial, were tried upon the same testimony, and are presented to us for consideration upon one transcript. The facts relating to each case are identical. The defendant filed a cross-complaint in both actions, and in both actions had judgment. The plaintiffs in each case appeal.

The record shows that on and prior to October 15, 1923, the defendant was and had been engaged in the business of selling lots in different parts of Los Angeles County, and for that purpose had agents and salesmen engaged in interesting and finding prospective purchasers for such lots; that on or about said date the plaintiff Emily Lepper and the plaintiff Lera Clark went upon the said Ratterree Tract and viewed two lots which the plaintiffs testified were lots 235 and 236 of said tract. The premises were a part of what is known as Washington Boulevard Tract, lying along and on the north side of Washington Boulevard in the city of Los Angeles. That the said plaintiffs, at the time of viewing the lots in question, were accompanied by a salesman of the defendant company; that at the time of the inspection of said lots a small plat of said tract was handed to one of the plaintiffs, but was not examined by them; that at the time of the inspection of said lots no mention was made of the number of said lots, nor was any particular attention paid to the small plat thereof which was handed to one of the plaintiffs by the defendant's salesman. The original plat handed to one of the plaintiffs was introduced in evidence, and is made a part of the record in this case. An inspection of the plat shows that the numbers of the lots thereon are in very small figures and not very easily read,

though by turning the plat to one side it does appear that the word "sold" is written or printed on the lots numbered 235 and 236.

A few days after the personal inspection of the lots, a contract of purchase was entered into by L. E. Lepper and Emily Lepper for the purchase of one of the lots, and by Lera Clark for the purchase of the other of said lots. The contract entered into by the plaintiffs L. E. Lepper and Emily Lepper described the lot as number 235 in said tract, and the contract entered into by Lera Clark described the lot as number 226 of said tract. The lots described in the respective contracts were situate in a different block and were lots different from those inspected by the respective plaintiffs, according to their testimony. The contracts in both cases called for the payment of a purchase price of $1800 per lot. About one year later, according to the record and the allegations of the complaints, the discovery was made that by mistake the plaintiffs in this action had contracted to purchase lots 225 and 226 instead of lots 235 and 236. Upon such discovery the plaintiffs sought to have the alleged mistake corrected, and, upon the refusal of the defendant to make any adjustment, this action was begun.

The complaint, after what is called a preliminary statement therein, relative to the inspection of lots 235 and 236, the execution of the contract under mistake, and that at the time the contract was signed the agent of the defendant represented and stated to the plaintiffs that the contracts covered the two lots that had been viewed by the plaintiffs, sets forth two causes of action. The first cause of action alleges that the plaintiffs relied upon the representation of the agent to the effect that the description in the contract was correct and described the lots which plaintiffs had viewed and inspected and agreed to buy, and that upon such acts and conduct the plaintiffs were induced to sign the respective contracts, and without which said contracts would not have been signed. It is further alleged that the agent and representative of the defendant knew that such statements were false and fraudulent, and were made with the intent to deceive and defraud the plaintiffs. The second cause of action alleges that the plaintiffs, relying upon the acts, conduct and statement made by the agent of the

defendant to the effect that the contracts they were signing covered · and properly described the lot they had viewed and inspected and had intended and agreed to buy, signed the contract; that plaintiffs are informed and believe that defendant well knew plaintiffs were signing said contract under a mistake and misunderstanding as to the property described. The complaint also alleges that defendant knew, at the time of signing said contract, that plaintiffs were so mistaken, or that defendant was likewise mistaken in that regard, and that as a result of the foregoing, and because of said mistake and misunderstanding, plaintiffs paid to the defendant the sums of money set forth in the complaint. The complaints in both actions set forth what was done toward securing a rescission of the contracts, asks for a rescission of the contracts and for the return of the money paid on account of the contracts herein referred to. The complaints in both actions are practically identical save as to the number of the lot described, and we have set forth the pleadings as though but one complaint were involved. The answer of the defendant in both complaints denies any fraudulent misrepresentations; denies any false representations; also denies that the defendant knew that the plaintiffs were acting under any mistake; denies that the plaintiffs relied upon the representations of any agent of the defendant; denies that the plaintiffs would not have executed the contracts if they had not been acting under mistake or misrepresentations on the part of the defendant. The answer of the defendant, in paragraph V, in answer to paragraph VIII of the plaintiffs' complaint, which contains in substance, a statement of the facts covering the transaction, denies as follows: ''Referring to paragraph VIII denies that through want or lack of diligence or care on the part of plaintiffs, that they did not discover the alleged facts set forth in said complaint, prior to December 1, 1924, and denies that they did not know their rights prior to March 26, 1925, and alleges that plaintiffs have had full knowledge and notice of all facts and all their rights in the premises, and of all those things which they allege they have no knowledge or notice of, on, after and ever since October 15, 1923.'' The answer of the defendant further denies that the plaintiffs believed or supposed the description contained in said con-

tracts was a description of other property, or any property which plaintiffs had intended or agreed to buy, different from that described in said contracts. The answer of the defendant denies that the defendant knew plaintiffs signed said contract under any mistake or misunderstanding as to the context thereof. For a third defense the defendant, in its answer, alleges that the plaintiffs have been guilty of laches and unreasonable delay in bringing this action, and that if plaintiffs ever did have any cause of action, they have lost their cause by sleeping on their rights for so long a time as to bar any relief in equity.

The court found that on or about the 15th of October, 1923, the plaintiffs, of their own free will, went upon a tract of land described as tract number 6256, etc., also known as Ratterree Washington Boulevard Tract, and there viewed and inspected said tract; that at the time the plaintiffs went upon said tract, defendant, by one of its agents and salesmen, handed to plaintiffs a circular on the front page of which was correctly reproduced a map showing said tract in its entirety; that said map clearly and plainly showed each and every lot of said tract, by its correct number, and clearly and plainly showed the dimensions of every lot in said tract and the dimensions of every road, street and alley of said tract; that the said pamphlet, at the time the same was handed to the plaintiffs, not only showed all the said lots and numbers and all said dimensions, but also had clearly printed on a number of the lots so shown, in large, bold letters, the word "sold"; that the word "sold" appeared upon lots 235 and 236. We may here repeat what we have heretofore said about the word "sold" and the numbers of the lots. An inspection of the miniature plat contained in the transcript shows that the numbers are very small and that the word "sold" is so printed that it is necessary to turn the plat to one side before it can be read. The court further found that no relation of trust and confidence existed between the plaintiffs and the defendant, and then found that "plaintiffs had no right to rely upon any representation made by defendant or any of its agents or salesmen at that time, with reference to the description of any lot viewed or inspected by plaintiffs; that there was then and there open to plaintiffs the means of full knowledge and information as to the description and location of

lots 235 and 236, and also of lots 225 and 226"; that if plaintiffs failed to fully inform themselves as to the location and description of said lots, said failure was due to their own negligence and carelessness; that plaintiffs, both of whom viewed said lots and saw said pamphlet prior to signing of any documents in connection therewith, are highly educated and intelligent, etc. The court further found "that plaintiffs had no right to rely upon any representations of said defendant, or any of its agents or salesmen, to the effect that the description in the contract signed by plaintiffs was a correct description, and that plaintiffs were not induced to sign the contracts by any false and fraudulent, or false or fraudulent representations of the defendant, or any of its agents or salesmen." The court further found that the defendant did not know that the plaintiffs were acting under any mistake.

The court nowhere found that the allegations of the complaints—that the plaintiffs were acting under mistake, that they went upon lots 235 and 236 of the tract in question, and that the plaintiffs thought they were buying the lots inspected by them—were true. It may be here stated that the complaints and the answers contained allegations and denials as to the selling price of the respective lots, but as the value of the lots is not material, no further mention need be made thereof. The pleadings are also absolutely silent as to any changed conditions of the respective parties, and no facts are set forth or pleaded in relation thereto which would show that either of the parties would be disadvantaged by reason of the equitable interposition of the court herein in adjudging and decreeing rescission of the contracts and the return of the money paid on account thereof.

While no portion of the testimony is printed as an appendix to appellants' brief in this action, the following summary set forth by appellants in their argument is a fair statement of the evidence relied upon in this cause:

Mrs. Lera Clark testified in substance as follows: The printed circular, showing a plat of real estate, was handed to her by one of defendant's salesmen while she and Mrs. Lepper were viewing the lots. This witness and Mrs. Lepper had gone to the tract to look at the lots, and there met one of defendant's salesmen. They were shown two lots. The lots

were about the fifth and sixth lots back of the first alley-
way, which was back of the first lots facing on Washington
Boulevard; told the agent she would not be interested in
anything very far from Washington Boulevard. The plat
marked Plaintiffs' Exhibit 1 was the only plat shown the
witness. The witness did not know the number of the lot.
The agent said there were only two lots left in the tract.
This salesman, accompanied by another salesman, came to
the house to talk with Mr. Clark, who said that if the lots
were right off Washington, they would be satisfactory. ''I
think they had referred to this map they had given me;
they talked about the lot being so near Washington, so near
the business section, but far enough away so that it would
be a good lot on which to build a flat; they said that Wash-
ington Boulevard would soon be finished; they didn't talk
much about the plat; just about the lot. It is the same lot,
the lot we were shown; it is the fifth lot from the corner.
A year later the mistake was discovered when a Mr. Franklin
came to talk about the lot, and on investigation learned the
real location of the lot described in the contract. This lot
was in the same relative location in the block farther away.''
On cross-examination the witness testified that she did not
look at the map at all; that she looked at the property;
that they were not bothering with the map because they
were on the land; it was the location of the lot in which
they were interested, and not in the plat; that the salesman
did not point to the map; ''the salesman told me to show
that to my husband. The lot was not more than a city block
from Washington.'' The witness thought that the streets
were laid out at the time. The witness further testified that
the salesman had a big roll in his hand but did not open
it; that she never thought of the number of the lot once
when she signed the contract; that she did not notice the
word ''sold'' on lots 235 and 236 until called to her atten-
tion in court by the presiding judge, and then, by turning
the plat to one side, she could read the word ''sold.'' The
witness further testified concerning the contract as follows:
''I don't know that I read that contract over particularly;
it was the lot that I wanted, and I was perfectly willing to
buy it.''

Mrs. Lepper testified that she was with Mrs. Clark on the
first trip to the tract and examined the lots, looked at the

lots; "that the lots were a good city block from Washington Boulevard." The witness could not indicate the location of the lots on the plat because she did not understand enough about directions and could not point out the numbers of the lots on the plat; did not know whether the alley back of Washington was named Cologne Street or not; that the lots were one city block from Washington; that the agent said to her, "Do you want to see the map?" to which the witness replied, "No, I just want to see my lot." On cross-examination the witness further testified: "I don't understand the map very well; that is what I told the salesman." The agent took me a good city block off Washington Boulevard and said, "You are so near Washington you will be able to have a resale of these in a very short time." The witness, after looking at the plat, testified: "I should say here is Washington; then, as I remember, is the alley; then, our lots; then, another street; I don't know the name of it." On redirect examination the witness guessed that the lots were fifty or sixty feet from the alley.

L. R. Clark, a witness called by the plaintiffs, testified that the two salesmen came to his house; said they had two good lots left in the tract, and they were such a short distance from Washington Boulevard it would be a good investment; "I thought it was a good investment because they were just starting to widen Washington Boulevard. They had this little plat and marked the two lots we were to get." An examination of the plat shows the marking to be on lot number 236. "The salesman said they had only two lots to sell." This witness did not sign the contract and never saw it.

Dr. L. E. Lepper, one of the plaintiffs, testified as follows: After Mrs. Clark and Mrs. Lepper had seen the tract, he and the two salesmen drove out to the tract. The witness told the salesman he wanted to see the lots the ladies had been shown. The salesman took him to the tract and said: "This is the lot Mrs. Clark wants, and this is the one right next to Mrs. Clark that Mrs. Lepper wants; you are standing on the lot that Mrs. Lepper wants." The witness then testified that the lots were about the distance of an ordinary city block from Washington Boulevard; that he did not know what the numbers were; that the agent said nothing about the numbers; that the agents had another plat

with them; that it was a larger plat; the agent stated that the lots marked in red were all sold, but the two lots pointed out as the ones upon which they were standing and wanted to buy were not colored red; that at the time of the closing of the contract later in the day, the witness said: "Well, I hope that these numbers that I am signing for represent the lots I have seen this morning"; to which the salesman replied: "A reputable concern like Ratterree could not afford to misrepresent things." On cross-examination the witness further testified: The map (Plaintiff's Exhibit 1) was not shown to or seen by the witness for more than a year afterward; that the only map he saw was the chart shown out at the tract the day he first went out there; that he recollected no lot numbers, only colors; that he was not interested in the chart but in the property; that he did not read the contract before he signed it. On redirect examination this witness testified that he did not read the contract because the salesman told him it was the ordinary conventional type of contracts used in sales on the tract, and he assumed it would be all right inasmuch as he was dealing with a concern like the Ratterree Investment.

This summary is taken from appellants' brief and, therefore, may be assumed to be as favorable a presentation of the plaintiffs' cause of action as warranted by the facts. No testimony was introduced by the defendant, save expert testimony, as to the value of the lots.

In connection with the foregoing summary of the testimony, we may state that we have read the complete transcript of the evidence and do not find a single word therein to the effect that the salesman ever mentioned the number of the lots to the plaintiffs, or that any representation was made in relation thereto, save and except the words "a reputable concern like Ratterree could not afford to misrepresent things," in reply to a question by Dr. Lepper. The testimony shows that Mrs. Clark read the contract, but did not pay any particular attention to it. The testimony does not show whether Mrs. Lepper did or did not read the contract which she signed, but there is not a word of testimony to show that either one of them relied upon a single statement made by any of the defendant's salesmen, nor is there anything in the record to show that Dr. Lepper relied

upon anything that had been said to him by any of the defendant's salesmen.

An inspection of the plat, which was handed to the prospective purchasers when they first visited the tract, and which was introduced as an exhibit in this cause, discloses the following: The tract is bounded on the south by Washington Boulevard. This boulevard, however, does not run directly east and west, but runs along the tract in a northeasterly and southwesterly course so as to necessitate a diagonal location of the lots along the boulevard. The first tier of blocks between Washington Boulevard and the alley immediately to the north, as shown by the plat, are in depth only the length of one lot. This alley is unnamed. The first street to the north of Washington Boulevard is Cologne Street. Lots 225 and 226, in the block north of Cologne Street, are in the center of the block facing Olga Avenue. Lots 235 and 236 are in the center of the block south of Cologne Street, and likewise face on Olga Avenue. The relative position of all four of the lots is the same, save and except that two lots are north of Cologne Street and two lots are south of Cologne Street. The summary of the testimony shows that some of the witnesses testified the lots were a good block from Washington Boulevard. Upon this testimony the court might very well conclude that the two lots were in the block north of Cologne Street. The witness Mrs. Lepper knew nothing about the plat, nor did she know much about directions. The testimony shows that none of the witnesses paid much attention to the plat. Other testimony which we have not set out herein was to the effect that the tract was unimproved, save that the streets were marked out; that there were no buildings upon the property, and work had just been begun widening Washington Boulevard. Under such circumstances we think the trial court might very well conclude that the contracts which the parties signed spoke the truth. The alleged mistake in the numbers of the lots inserted in the contracts was not discovered until a year after the lots had been purchased.

While what are called findings of fact, set forth in the transcript, are mostly conclusions of law and do not correctly state the law in all instances, and are deficient in that there is no finding on the question of whether appellants did or did not sign the contracts under the mistaken idea that

they were buying lots 235 and 236 instead of lots 225 and 226, we do not very well see how any other judgments could be rendered in these actions. ██ We agree with the appellants that it was not necessary, in an action to rescind on the grounds of mistake, that the mistake must be mutual. While some jurisdictions hold that the mistake must be mutual, section 1577 of the Civil Code and the numerous decisions of the courts of this state show that an action to rescind may be based upon the mistake only of the party prosecuting the action. (See *National Bank of California* v. *Miner,* 167 Cal. 532 [140 Pac. 27]; *Dunham* v. *McDonald,* 34 Cal. App. 744–747 [168 Pac. 1063]; *Los Angeles Co.* v. *New Liverpool Co.,* 150 Cal. 21–27 [87 Pac. 1029].) ██ Rescission, of course, cannot be had unless the party rescinding has been diligent and is capable of making restitution so that the opposite party is restored substantially to the same position as though the contract had not been made. (*Goodrich* v. *Lathrop,* 94 Cal. 56 [28 Am. St. Rep. 91, 29 Pac. 329].) Section 3407 of the Civil Code specifies that ''rescission cannot be adjudged for mere mistake unless the party against whom it is adjudged can be restored to substantially the same position as if the contract had not been made.'' Upon this question the record is entirely silent.

██ As we have said, the record shows no fraud, no misrepresentation, and therefore the cases cited upon the subject of fraud need not be considered. We think the following statement of the law, found in 6 Cal. Jur. 84, is applicable to the present case: In order to relieve a party from mistake ''the evidence must be clear and convincing, showing the mistake to the entire satisfaction of the court, and not loose, equivocal or contradictory, leaving the mistake open to doubt. If the evidence is sufficient to satisfy the court that the instrument does not express the intention of the parties, and that the plaintiff had been mistaken in supposing that it did, the fact of his having read the instrument will not prevent the court from finding that it was made under a mistake.'' And, further: ''If a person enters into a contract with another, between whom and himself no relation of a special trust or confidence exists, and it is reduced to writing by such other person, and the means of knowledge of the terms of the writing are equally open to both, and he signs it without reading, he cannot avoid a

liability created by the writing, even if its terms differ from the terms of the contract as agreed upon verbally. A person accepting a contract is charged with knowledge of all of its provisions, where he had the means of such knowledge, and of which he carelessly and negligently deprived himself. The fact that he is illiterate does not change the rule. The care of a prudent man in the transaction of his business demands an examination of the instrument before signing, either by himself or by someone for him in whom he had a right to place confidence.'' While a number of cases have been cited by appellant where rescission has been granted· on the grounds of a mistake as to the subject matter of the purchase, such as relating to the acreage of real estate, the boundaries of land, and whether certain springs or water sources were not upon the land actually purchased, but were shown to the purchaser as being upon the land, the question goes back to whether the evidence clearly establishes the allegations of the mistake. The explanation given by the appellants as to their failure to discover the alleged mistake was a matter of fact to be passed upon by the trial court. During the year intervening between the purchase of the lots and the discovery of the alleged mistake the respective parties had been making payments monthly. It is possible that the parties never looked at their contracts during that period of time. The evidence shows that they had copies in their possession, but the evidence in this respect shows an absolute want of diligence, care and attention, similar to that relating to the execution of the contracts in the first instance.

In view of the lack of the important elements in the testimony which we have heretofore pointed out, we do not very well see how any trial court could find that the mistakes in these cases were established by clear and satisfactory proof. This is especially true in view of the fact that written instruments are not to be lightly set aside or disregarded.

It is therefore ordered that the judgments in both cases be and the same are hereby affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.