[Civ. No. 11875. Second Appellate District, Division One.—November 10, 1939.]

HARRY DAVIS, Respondent, v. STATE BOARD OF OPTOMETRY et al., Appellants.

U. S. Webb, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Appellants.

Morris Abraham and Frank S. Hutton for Respondent.

DORAN, J.—In a petition for a writ of mandate filed in the superior court the petitioner, Harry Davis, sought a writ to compel the defendants, the State Board of Optometry of the State of California, and three members thereof, to

restore his license which had been revoked as the result of a hearing conducted under the provisions of the Optometry Law (Stats. 1913, chap. 598, as amended; Act 5668 of Deering's General Laws of California). Issues being joined, the matter was submitted for decision in the superior court upon the pleadings, which contained the complaint and decision of the board, as well as the reporter's transcript of all of the testimony taken at the hearing, and all exhibits introduced. No other testimony of any nature was presented.

Defendants are appealing from the judgment granting the writ, and from the order denying their motion for a new trial.

The record reveals that a complaint was filed with the board by an investigator of the State Board of Optometry, charging the respondent herein, a registered optometrist, with unprofessional conduct as defined in subdivision 3 of section 11 of the Optometry Law. The first charge accused respondent with advertising in various newspapers in which untruthful statements were alleged to have been made in the advertising of optical business or treatment. The second charge accused respondent of obtaining from certain named persons various designated amounts, by reason of the untrue statements appearing in the advertisements. The board found that the first charge was true, and that a portion of the second charge was true, and thereupon ordered that the certificate of registration theretofore issued to respondent be revoked.

The advertisements which, it was charged, were placed by respondent in the various newspapers, related to the sale of white, single vision lenses, including examination and rimless mounting or frames, for $7.50. A so-called "typical" advertisement, which appeared in a Los Angeles newspaper on April 18, 1937, was introduced into evidence at the hearing and read as follows:

"It is NOT necessary TO PAY more for your GLASSES

"These Beautiful Rimless GLASSES Complete $7.50

"This price includes expert examination by eye-sight specialist, any single-vision lenses your eyes require and choice white gold filled rimless mounting or frame.

"formerly DAVIS OPTICAL CO. Now

IDEAL OPTICAL CO.

"Los Angeles 551 Broadway

"Long Beach 144 Pine Ave.

"Alhambra Main and Garfield at Sontag Drug Store."

It appears that there is in existence a corporation known as the Davis Optical Company (hereinafter referred to as the Davis company), owned by the respondent and his wife. This corporation, according to the testimony of respondent, owns all of the equipment of the Ideal Optical Company (hereinafter referred to as the Ideal company), at the three stores listed in the advertisement hereinbefore quoted. The Davis company had been in the business of manufacturing and dispensing glasses prior to the formation, in April of 1937, of the Ideal company. With the formation of the latter company no tangible property was transferred by the Davis company, but "just the right to do business". The Davis Optical Company and the Ideal Optical Company shared offices on the same floor and at the same address in Los Angeles. The Davis company leased the equipment, and subleased the premises at the three stores, to the Ideal company for 20 per cent of the gross retail business done. However, none of this 20 per cent for the rental had been paid from the time the Ideal company was formed until the petitioner testified before the board on June 25, 1937. Appellants argue that the evidence reveals the Davis Optical Company and the Ideal Optical Company to be merely the *alter ego* of respondent.

Briefly, the evidence of alleged misconduct on the part of petitioner was based upon the testimony of one William Meikle, an United States customs inspector at San Pedro, California, a disinterested witness who answered the advertisement, as well as the testimony of four individuals who visited the business establishments of petitioner, in part in response to the advertisement. The respondent disputed the effect of the evidence and denied any connection with the Ideal Optical Company. Thus upon conflicting evidence the board found, in effect, that it was true as alleged in the complaint that Harry Davis was guilty of unprofessional conduct in that he had advertised, or caused to be advertised, in various newspapers, "optical business and treatment in which untruthful statements were made in each and every one of said advertisements, in that in each of said advertise-

ments said Harry Davis offered for sale complete glasses containing any white single vision lenses and including frames and examinations for $7.50, and also containing the statement 'It is not necessary to pay more for your glasses'; that said statement was untrue in that the said Harry Davis did consistently fail, refuse and neglect to sell or furnish complete glasses containing white single vision lenses and including frames and examinations for the sum of $7.50, to persons answering said advertisements.''

Appellants contend on appeal that the Ideal Optical Company is the *alter ego* of the respondent herein; that the evidence is sufficient to warrant the Board of Optometry in finding that the petitioner was guilty of unprofessional conduct; and that the trial court erred in failing to make findings of fact.

With regard to the last-mentioned contention, respondent urges that, ''The sole question before the trial court was: Was the record upon which the Optometry Board made its findings and order, legally sufficient to justify the holding of the petitioner guilty of unprofessional conduct? The judgment of the court was that the evidence before the Board was legally insufficient to justify an order of revocation of the license of the petitioner and it accordingly ordered a peremptory writ to issue. There was no other order before the court. The issue before the court was a legal issue and not a factual one.''

The judgment of the trial court, in part, was as follows: '' . . . and evidence having been introduced and argument on the facts as well as the law having been made by counsel representing each of the above entitled parties, and the cause having been submitted to the Court for decision, and good cause appearing therefor,

''IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment be rendered for the petitioner and against the'' defendants ''as follows: 1. That a peremptory writ of mandate issue in favor of the petitioner and against the'' defendants ''and each of them as follows . . . ''

The writ ordered the board to rescind and set aside its order, and to restore to petitioner his certificate to practice optometry.

█ It should be noted, as pointed out by appellants, that the court made no findings of fact or conclusions of law. It

is evident, however, from the judgment as recited above, that the trial court after reviewing the transcript of the evidence adduced at the hearing before the board substituted its judgment and discretion for the judgment and discretion of the board.

Section 11 of the Optometry Act (Act 5668 of Deering's Gen. Laws of Cal.), reads as follows:

"*Grounds for revoking certificates. Unprofessional conduct.* The certificate of registration of any person registered as provided for in this act, may be revoked or suspended for a fixed period by the said board of optometry for any of the following causes: . . .

"3. For unprofessional conduct . . . Unprofessional conduct shall mean . . . the obtaining of any fee by fraud or misrepresentation; . . . the advertising of optical business or treatment or advice in which untruthful, improbable or impossible statements are made."

Although the law unequivocally confers upon the board jurisdiction to determine the questions likely to arise as a result of the above-quoted provisions of the act, and although there may have been sufficient evidence in the record to support the conclusions reached by the board, nevertheless in the circumstances the court has the power to hear and determine the same questions. (*Drummey* v. *State Board of Funeral Directors and Embalmers,* 13 Cal. (2d) 75 [87 Pac. (2d) 848].)

In the Drummey case, which presented an analogous situation, the court declared: "After considering the various possibilities, we can see no escape from the conclusion that in such a proceeding the court to which the application for mandate is made must weigh the evidence, and exercise its independent judgment on the facts, as well as on the law, if the complaining party is to be accorded his constitutional rights under the state and federal constitutions. . . .

"We think the limitations on the rule that the court must exercise its independent judgment on the facts in such cases, suggested by the United States Supreme Court in the St. Joseph Stock Yards case (*St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38 [56 Sup. Ct. 720, 80 L. Ed. 1033]), are sound. The findings of a board where formal hearings are held should and do come before the courts with a strong presumption in their favor based primarily on

the disputable presumption contained in section 1963, subsection 15 of the Code of Civil Procedure 'That official duty has been regularly performed.' Obviously, considerable weight should be given to the findings of experienced administrative bodies made after a full and formal hearing, especially in cases involving technical and scientific evidence. Another limitation on the rule also suggests itself. Normally applications for such writs should be filed in the trial courts, whose normal function it is to determine and ascertain controverted issues of fact.'' (*Drummey* v. *State Board of Funeral Directors and Embalmers, supra,* pp. 84, 86.)

It is respondent's contention that ''The only material questions raised by the answer were questions of law, and the case was tried upon the theory that only a question of law was at issue. If the respondent and the appellant Board had entered into a stipulation that the facts upon which petitioner's claim rested were as set forth in the transcript of the proceedings before the Board, and that the case should be submitted on the record so made, we would have had a case submitted upon a stipulation of facts, and in that case no findings would have been necessary.'' *Wixom* v. *Davis,* 198 Cal. 641 [246 Pac. 1041], and *Gregory* v. *Gregory,* 102 Cal. 50 [36 Pac. 364], are relied upon in support of this contention.

It is further contended by respondent that ''Even if it can be said that there was no agreed statement of facts, it nevertheless clearly appears that there was no dispute in the facts, and that being so, it left to the court the sole function of drawing its conclusions of law therefrom, and findings were therefore not necessary. We before pointed out that the only duty resting upon the trial court was to determine from the agreed record whether or not the Optometry Board's action was correct and within its jurisdiction. The trial court being of the opinion, upon the undisputed facts, that the Optometry Board exceeded its jurisdiction and that there was not sufficient or any evidence to sustain its findings, ordered the issuance of the writ. This was proper.''

▉ Although the parties apparently agreed to submit the issues upon the evidence adduced at the hearing before the board, nevertheless, under the circumstances, the court was bound to determine the questions of fact involved and

necessarily to pass judgment upon the value and effect of the evidence presented. Findings, therefore, were necessary, indeed indispensable unless waived. The record reveals that the findings were not waived. The parties submitted the issues upon an agreed record of the evidence; it was the trial court's duty to find as to the effect of such evidence and in that connection make the necessary findings. (Sec. 632, Code Civ. Proc.; *Williams* v. *Wren*, 88 Cal. App. 607 [263 Pac. 1038]; *Black* v. *Board of Police Commrs.*, 17 Cal. App. 310, 313 [119 Pac. 674]; *Taylor* v. *Taylor*, 192 Cal. 71, 80 [218 Pac. 756, 51 A. L. R. 1074].) This the trial court failed to do, which was error.

For the last-mentioned reason the judgment is reversed and the cause remanded for a new trial. The appeal from the order denying a new trial is dismissed.

York, P. J., and White, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 8, 1940.