[Civ. No. 29155. Second Dist., Div. Four. Nov. 18, 1966.]

L. T. MITIDIERE, Plaintiff and Respondent, v. GEORGE J. SAITO, Defendant and Appellant.

Milton Zerin and Morton Minikes for Defendant and Appellant.

Gabler, High & Clark and Jess F. High for Plaintiff and Respondent.

KINGSLEY, J.—Plaintiff sued to recover real estate broker's commissions in the sum of $7,200. Defendant denied owing the commission to plaintiff and claimed that the agreement obligating him to pay the commission was obtained by fraud, concealment, deception and mistake, and that the agreement was rescinded on these grounds. After a trial by court, judgment was entered against defendant in the sum of $7,200 principal, $750 attorney's fees, and costs of suit in the sum of $135.29.

Defendant, 35 years of age, has been a flower grower for 11 years; previously he worked as a day laborer. Defendant listed his property with plaintiff in an open listing for a period of 10 days commencing August 20, 1963, and expiring September 1, 1963, with the property being listed at $120,000, terms cash. Defendant contends that, when he signed the agreement, he understood the $120,000 figure to represent a net price, and plaintiff contends that the figure was to represent the gross selling price. This incident was the first real estate transaction in which defendant was ever involved.

Defendant testified that a Mr. Gentile, a licensed real estate salesman employed by plaintiff, approached him about listing his property with plaintiff. Defendant informed Mr. Gentile that he would consider selling if he could net $15,000 per acre. Defendant also told Mr. Gentile that he had an offer of $15,000 net per acre, but had not accepted that offer because it was on terms. Defendant told Mr. Gentile that he had the property listed with another broker, a Mr. Keltner, in an open listing. Defendant signed a listing, and thereafter showed it to his neighbor, Mr. Keltner, who informed defendant that the listing with plaintiff was a gross listing and not a net listing. Defendant informed plaintiff of the mistake, and plaintiff said he had an offer from a Mr. Small for $120,000 cash. Mr. Gentile offered to cut his commission from 6 percent to 5 percent. Later defendant told Mr. Gentile over the telephone that he did not go into escrow on the Small offer because he had wanted to have a net listing and not a gross listing.

Mr. Gentile testified that defendant informed him that he had an open listing with brokers for $130,000 or $132,000 with terms. After an hour or more of negotiations defendant agreed to sign an open listing at $120,000. Prior to signing the agreement the broker computed for defendant that his commission would be $7,200 (6 percent of $120,000) and that defendant would be able to purchase the flower ranch he desired for $98,000 and would have approximately $10,000 to wipe out local debts and to transfer certain of his property to the flower ranch he desired to purchase. On direct examination Mr. Gentile consistently stated that the listing in question represented a gross figure, although on cross-examination he once used the term ''net'' in talking about the ''figure.''[1]

Defendant alleges that the court erred in believing that rescission could not be granted on the grounds of unilateral mistake. Defendant also alleges that the buyer did not prove that he was financially able to buy and that there was a material variance between pleadings and proof.

## I

■■ Defendant correctly asserts that, in certain cases, rescission may be had based on a unilateral mistake (*Moore* v.

---

[1] ''THE COURT: Go ahead. Did you figure out at that time that $135,000 was more than $16,000 an acre? You started to answer it.

''THE WITNESS: We were dealing with a net figure. I don't recall whether I figured out whether it had anything to do with acreage or not. We were trying to get a total price for the piece of property, of approximately X number of acres.''

*Copp* (1897) 119 Cal. 429 [51 P. 630] [which was questioned on another point in *Borneman* v. *Salinas Title Guar. Co.* (1944) 66 Cal.App.2d 500, 504 [152 P.2d 649]]; *Lepper* v. *Ratterree* (1929) 98 Cal.App. 245 [276 P. 1037]; *Forest Lawn Memorial Park Assn.* v. *DeJarnette* (1926) 79 Cal.App. 601 [250 P. 581]), and that the trial judge erroneously believed that only mutual mistake could be grounds for rescission.[2]

And plaintiff also asserts a correct view of the law when he states that there can be no reversal based on bad reasoning or mistaken views of the law where there is no erroneous ruling. (*Lincoln* v. *Superior Court* (1943) 22 Cal.2d 304 [139 P.2d 13] [questioned in *Robinson* v. *Superior Court* (1950) 35 Cal.2d 379 [218 P.2d 10]]; *Davey* v. *Southern Pac. Co.* (1897) 116 Cal. 325, 329 [48 P. 117].) It has also been said the findings cannot be upset or modified by expression of inconsistent opinion by the court. (*Martin School of Aviation, Inc.* v. *Bank of America* (1957) 48 Cal.2d 689 [312 P.2d 251].)

Plaintiff argues that, in spite of the court's language cited in footnote 2, the court in fact found that no unilateral mistake existed, and therefore the court's erroneous view of the law of mistake is irrelevant. Plaintiff bases his argument on the court's findings as to the affirmative defense in the answer which said: "7. The allegations of paragraph 3 are untrue." Paragraph III of the affirmative defense of the answer reads: "The signature of defendant was obtained on the document described in plaintiff's complaint by fraud, concealment and deception by plaintiff, through its agent, *and* by the mistake and error of defendant as to the contents of said document." (Italics added.)

---

[2] "THE COURT: Well, counsel, from what I have heard so far, I think counsel is well aware that in relation to fraud you have got to have very clear, convincing evidence before the Court would find fraud in a deal. Insofar as mistake is concerned, I don't find that here. Undoubtedly, from the evidence, Mr. Saito had one thing in mind when he signed—he had something in mind different, apparently, from what this turned out to be, but this alone would not give the Court the right, I think, to hold that there was a mutual mistake here and for the Court to nullify the document.

.   .   .   .   .   .   .   .   .   .

"THE COURT: Counsel, if that type of unilateral mistake can void an instrument there is no written instrument on which anybody ever could get a judgment, because the person certainly did not mean to get himself in the position he is now in. This is obvious. And had he thought of all these contingencies, he never would have done it. He made a mistake, he wouldn't have signed it, it was a mistake. No written document would be worth a thing if that kind of unilateral mistake were a ground for rescinding a document. The objection is sustained. I can't see that it is material here."

The difficulty with plaintiff's argument is that the finding, as drawn, read against the use of the conjunctive in the pleading, results in a negative pregnant. It cannot be determined whether the trial court meant to find that there was neither fraud nor unilateral mistake, or whether it meant to find that one of the two allegations was true (without indicating which) but that both were not. The net result is that there is no intelligible finding at all.

The traditional disapproval of a negative pregnant appears in cases dealing with pleadings, but it has also found expression in cases dealing with findings of fact.[3] On the other hand, there are cases which would restrict the negative pregnant approach to pleadings and reject it in construction of findings.[4] However, in *Johndrow* v. *Thomas* (1947) 31 Cal.2d 202, 209 [187 P.2d 681], the Supreme Court reviewed the two approaches above referred to and concluded: ''Hence, the appropriate rule should be that the sufficiency of findings turns upon the particular case and that there is no absolute rule regarding negatives pregnant, which at best is nothing more than a rule of construction.''

In the case at bench, we have the conflicting testimony of defendant and Mr. Gentile, the clearly expressed view of the trial judge, and the ambiguous finding above discussed. Since the existence and effect of the alleged unilateral mistake lay at the very heart of the case, we think that the parties were entitled to a clear finding on this issue—a finding which they did not receive.

It is argued that an appellate court should not reverse for mere ambiguity in findings unless the ambiguity was called to the attention of the trial court. (*Moore* v. *Craig* (1935) 5 Cal.App.2d 283, 286 [42 P.2d 647]; *Sweet* v. *Hamilothoris* (1927) 84 Cal.App. 775 [258 P. 652].) But in a case such as this, where it seems more likely than not that the judgment rests on an expressed misapprehension of the applicable law, we think that we have a case not of a mere ambiguity but, as we have said above, of a failure to find on a material issue.

It is also argued that relief cannot be granted for unilateral mistake due to carelessness, indifference or credulity, where

[3] *Williamson* v. *Clapper* (1948) 88 Cal.App.2d 645, 651 [199 P.2d 337]; *Mardesich* v. *C. J. Hendry Co.* (1942) 51 Cal.App.2d 567 [125 P.2d 595]; *Wiles* v. *Hammer* (1924) 66 Cal.App. 538 [226 P. 651].

[4] *Blue* v. *Watson* (1957) 147 Cal.App.2d 582, 590 [305 P.2d 911]; *Ballagh* v. *Williams* (1942) 50 Cal.App.2d 10, 14 [122 P.2d 343]; *McAuliffe* v. *McAuliffe* (1921) 53 Cal.App. 352, 355 [199 P. 1071].

the means of investigation were at hand and where the relationship of the parties was not fiduciary. (Civ. Code, § 1577; *Roller* v. *California Pacific Title Ins. Co.* (1949) 92 Cal.App. 2d 149 [206 P.2d 694].) However, while the evidence would have sustained a finding adverse to plaintiff, still it would also have sustained a finding in his favor. The resolution of this conflict was for the trial court and not for us. As we have seen, the trial court did not resolve it.

## II

■ Secondly, defendant states that the plaintiff did not prove the buyer was able to pay, and in order to get a broker's commission, the buyer must be able to command the funds to close the deal within the time required. (*Laack* v. *Dimmick* (1928) 95 Cal.App. 456 [273 P. 50] ; *Pellaton* v. *Brunski* (1924) 69 Cal.App. 301 [231 P. 583].) However, the record reveals a great deal of evidence showing that the buyer could pay. The buyer's brother, Lloyd Small, testified that his brother, Boyd Small, was in partnership with him and that Boyd was authorized to purchase defendant's property on behalf of a partnership consisting of the two brothers. Lloyd Small testified that his brother had a net worth of $225,000, and that he, himself, had a net worth of $120 [thousand]. Lloyd Small also testified that he owned property on Reseda Boulevard and sold 200 feet of it for $195,000. He testified that the partnership owned 30 acres in Chatsworth, worth more than $510,000 in 1963. ■ The duty of the appellate court is merely to determine whether or not there is substantial evidence to support the conclusion of the trier of fact. (See *Kallman* v. *Henderson* (1965) 234 Cal.App.2d 91 [44 Cal.Rptr. 108].) In the instant case, there is more than substantial evidence to show that the buyer Small was financially able to pay.

## III

■ Defendant alleged a material variance between pleading and proof (see *Bailey* v. *Brown* (1906) 4 Cal.App. 515, 517 [88. P. 518] ), in that plaintiff's complaint alleged that he "procured one Boyd W. Small who was at all times herein mentioned ready, willing and able to purchase the aforesaid property in accordance with the aforesaid written agreement," and the proof showed that Boyd Small was purchasing on behalf of a partnership consisting of himself and Lloyd Small. However, where a variance does not actually mislead the adverse party to his prejudice in maintaining his action or defense on the

merits, it is immaterial and may be disregarded. (*Hayes* v. *Richfield Oil Corp.* (1952) 38 Cal.2d 375, 382 [240 P.2d 580]; *Murnane* v. *Le Mesnager* (1929) 207 Cal. 485, 495-497 [279 P. 800]; Vold, *When Is A Variance Immaterial Under the Code of Civil Procedure?* (1956) 29 So.Cal.L. Rev. 182.) The variance here was certainly not prejudicial.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.