[Civ. No. 50778. Second Dist., Div. Two. Apr. 24, 1978.]

WILLIAM BRYAN OSBORNE et al., Plaintiffs and Respondents, v. CAL-AM FINANCIAL CORPORATION, Defendant and Appellant.

COUNSEL

John E. Crooks for Defendant and Appellant.

Jacobsohn & Christian and David L. Jacobsohn for Plaintiffs and Respondents.

OPINION

**FLEMING, J.**—The Osbornes (hereinafter plaintiff) as seller brought an action for damages for buyer's refusal to purchase real property. The jury returned a verdict for defendant buyer, but the trial court granted plaintiff a new trial on the ground that the court had abused its discretion (1) by admonishing plaintiff and his counsel in front of the jury, and (2) by refusing to allow plaintiff on rebuttal to call an expert witness to testify to the fair market value of the real property at the date of breach. In its memorandum opinion granting a new trial the court indicated it was convinced "beyond any reasonable doubt" that plaintiff's case had no merit; that plaintiff's own conduct produced the court's admonitions; that there was no excuse for not calling the expert witness on plaintiff's case in chief. Nevertheless, the court granted a new trial, stating that to ensure justice for all it must be afforded to "the worst."

Defendant appeals, contending that the record sustains no possible judgment for plaintiff; that if there were abuse of judicial discretion during the trial, such abuse was not prejudicial.

The key issue in the cause involves defendant's right to verify income and expense figures represented by plaintiff as applicable to the property and to terminate the contract if dissatisfied with the results of verification. The contract consisted of a deposit receipt and escrow instructions executed in more or less standard form on 3 November 1973. Under its terms plaintiff agreed to sell to defendant a 34-unit Pasadena apartment building for $295,000, escrow to close in 90 days. The deposit receipt stated, "Buyer has seven days to verify income and expenses." Escrow instruction provided: "Buyer shall have 7 days from receipt to verify income and expenses and may rescind by notice to seller's escrow and 21 days to verify that existing 1st can be assumed without prepayment penalty." Nowhere did the documents specify from what receipt the seven-day period was to run.

After the escrow was opened, defendant hired an independent investigator who ascertained that the building was operating at a loss and not at a profit as plaintiff had led defendant to believe. Plaintiff had represented that the net spendable annual income was $19,295, when in fact the building had been operating at a steadily worsening deficit due to "white flight" from the building, a tenant rent strike, and ever-increasing vacancies and vandalism. None of these difficulties had been disclosed to defendant.[1] Accordingly, on 3 January 1974 defendant cancelled the escrow and refused to buy the property. Plaintiffs ultimately sold the property to a third party on 19 April 1974 for $271,393.

Testimony was presented to a jury on the circumstances of execution of the documents. Plaintiff Osborne, a lawyer, certified public accountant, and justice court judge, testified that defendant's representative, Fisher, contacted him and said he was interested in the property after reading an advertising circular describing the property and a listing form giving income and expense figures.[2] The two agreed to meet at Osborne's Catalina home to enable Fisher to examine the income and expense records. According to Osborne, Fisher spent some five to seven hours there, with a break for lunch, perusing boxes of records of income and expense data that Osborne placed on the dining-room table. The boxes contained no summaries or adding machine tapes putting the raw data into usable form. According to Osborne, Fisher agreed to buy the property subject to a verification period of seven days from the date of their meeting, November 3. The two executed escrow instructions and deposit receipt, and Fisher left without taking any records with him. As the trial judge commented, it is difficult to understand how Fisher could have verified those records at all, let alone within seven days.

---

[1] As stated by the trial court in its memorandum: "And the Seller knew as a Certified Public Accountant his records disclosed an ever increasing loss each month from March of 1973 until when the escrow was opened on November 3, 1973. This loss was not small nor out of line in respect to the financial data furnished but to the contrary was *monumentally* different with an operational loss in the thousands of dollars." Elsewhere the record suggests losses of $4,000 a month.

[2] The broker's listing form stated:

| | |
|---|---|
| Price | $315,000 |
| Gross Income | 52,080 |
| Operating Expenses | 12,845 |
| Operating Income (Before deduction mortgage.) | 39,235 |
| Net Spendable Income | 19,295 |

The $19,295 figure was admittedly false.

Fisher's version of the meeting was that he was in Osborne's home in Catalina only a couple of hours. He saw no records. His objective was to get Osborne's signature on the escrow instructions and then check out the property. He never received any financial information from Osborne nor did the latter inform him about any of the problems connected with that property. On his failure to receive any financial information, he initiated his own investigation, and when he discovered that the income figures on the advertisement were untrue and there was no net spendable income, he cancelled the escrow.

The jury was instructed that: ". . . the defendant had a right to verify just what in truth and fact the income and expenses of the subject apartment house were for such reasonable period of time prior to November 3rd 1973 as would truly reflect whether the basic figures represented to them in Plaintiff's 34 were substantially correct. If the Defendant ascertained at any time during the period November 3rd 1973 to January 3rd 1974 that the income and expenditures figures failed substantially to support the representations made to them by the Sellers, they had the right to terminate the escrow."

By these instructions the court determined as a matter of law that the period for verification and cancellation was not any agreed-on period (since the agreement mentions only a seven-day period) but was a reasonable period running from the opening of escrow. The court further determined that the actual elapsed period, 3 November 1973 to 3 January 1974, was reasonable.

■ The questions of abuse of discretion and exclusion of expert testimony on rebuttal arose as follows: throughout the trial the trial court was frequently forced to remind counsel for plaintiff that he could not recover as damages for breach of a contract to sell real estate, the operating losses which occurred between repudiation of the contract and resale. Trial counsel did not agree with the court, and his insistence on offering such evidence and harping on the subject irritated the court. Additionally, the court indicated after verdict that it did not believe Osborne's story, finding it inherently incredible that the buyer would be expected to verify income and expense figures on a piece of property in seven days without possession of organized factual records. What is more, on one occasion the court felt bound to reprimand plaintiff and his counsel for having discussions with jurors during the trial. For all these reasons, an atmosphere of some tension arose. During presentation of his case in chief, plaintiff offered no evidence of value of the property at

time of breach except his own opinion that it was possibly worth $271,000, less cost of putting it into salable shape. Neither the owner nor his counsel wanted to be pinned down to an estimate of value; rather, they wished to emphasize the deteriorating value of the property during the period in question, i.e., the operating losses, which, however, were indeed nonrecoverable and irrelevant, as the trial court kept pointing out. (See *Sutter* v. *Madrin* (1969) 269 Cal.App.2d 161, 172 [74 Cal.Rptr. 627] [conc. opn.].) The proper measure of damages for breach of a contract to purchase real estate is the difference between the contract price and the value of the property at date of breach, plus actual expenses of resale. (*Royer* v. *Carter* (1951) 37 Cal.2d 544, 549 [233 P.2d 539]; Civ. Code, § 3307; *Abrams* v. *Motter* (1970) 3 Cal.App.3d 828, 850 [83 Cal.Rptr. 855].) Yet plaintiff offered virtually no solid evidence of value at date of breach during his case in chief. Defendant offered no evidence of value either, as indeed it had no need to. Finally, after defendant rested, plaintiff offered in rebuttal the testimony of a real estate appraiser as to value at date of breach. The offer of proof was that the property was worth some $220,000 to $230,000 at date of breach. The court refused to permit such testimony as rebuttal evidence.

I

"On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons . . . ."[3] (Code Civ. Proc., § 657.) The court's specified grounds for the order were its reprimand of plaintiff and its exclusion of rebuttal testimony, as discussed above. In addition, plaintiff specified as grounds for his new trial motion, errors in law occurring at the trial and excepted to by plaintiff (Code Civ. Proc., § 657, subd. 7), namely, the instructions that directed the jury to return a verdict in favor of defendant.

■ The rule of review is that all presumptions favor the order granting a new trial; that such orders are rarely reversed; and that the burden rests on appellant to show clear abuse of discretion in granting the motion. (See, e.g., *Mercer* v. *Perez* (1968) 68 Cal.2d 104, 112-113 [65 Cal.Rptr. 315, 436 P.2d 315]; *Miller* v. *National American Life Ins. Co.* (1976) 54 Cal.App.3d 331, 345 [126 Cal.Rptr. 731]; *People* ex rel. *Dept. of Pub. Wks.* v. *Hunt* (1969) 2 Cal.App.3d 158, 163-164 [82 Cal.Rptr. 546].) ■ On the other hand, the trial court is bound by the rule of

---

[3]Except, in cases not relevant at bench, of insufficiency of evidence or amount of damages.

California Constitution, article VI, section 13, that prejudicial error is the basis for a new trial, and there is no discretion to grant a new trial for harmless error. (*People, etc.* v. *Hunt, supra,* 2 Cal.App.3d at p. 172.)

The appellate court is not normally in a position to second-guess the trial court on the effect of the court's conduct upon the jury. If the court has concluded that its conduct prevented plaintiff from having a fair trial, that decision would normally end the matter, under the principles of review set out above. In this case, however, the trial judge appears to be saying he does not think his conduct could have been prejudicial; but he grants a new trial because he believes such grant is required as a matter of form to foster the appearance of justice. If that is the basis for his order, it is unsound, because it is clear that new trials may not be granted except for prejudicial error. The grant of a new trial for harmless error violates the constitutional provision and wastes judicial time and resources to no purpose.

Accordingly, the order granting a new trial is valid only if prejudicial error occurred at the trial. We therefore proceed to the merits.

## II

As we read the contract terms two separate issues are involved: (1) the buyer's general right to rescind the contract for material misrepresentation, and (2) the buyer's option to terminate the contract pursuant to the terms of the contract itself. ■ Under the first right, every contract to purchase real property is subject to rescission for material misrepresentation, whether fraudulent or innocent. (Civ. Code, § 1689; *Crocker-Anglo Nat. Bank* v. *Kuchman* (1964) 224 Cal.App.2d 490, 495-497 [36 Cal.Rptr. 806]; *Evans* v. *Spatt* (1955) 131 Cal.App.2d 47, 49 [279 P.2d 1026]; *Mitidiere* v. *Saito* (1966) 246 Cal.App.2d 535, 537 [54 Cal.Rptr. 665].) ■ Every contract is executed subject to implied legal conditions of good faith, which include the buyer's right to rescind within a reasonable time after discovery of the falsity of seller's material representations. (See 1A Corbin on Contracts (1950) §§ 163-165, esp. cases cited § 165, fn. 78, p. 86; *R. J. Cardinal Co.* v. *Ritchie* (1963) 218 Cal.App.2d 124, 143-146 [32 Cal.Rptr. 545]; *Mattei* v. *Hopper* (1958) 51 Cal.2d 119, 122-123 [330 P.2d 625]; *Lyon* v. *Giannoni* (1959) 168 Cal.App.2d 336, 339 [335 P.2d 690].) ■ The buyer's right to rescind does not render a real estate sales contract illusory, because the right arises upon the occurrence of objective facts not within the exclusive control of the buyer. The law gives a general right of rescission to the

buyer if, while acting promptly and diligently, he discovers that the seller has misrepresented essential facts concerning the subject property. (See discussion in *Mattei* v. *Hopper, supra,* 51 Cal.2d at p. 123.) The misrepresentations at bench are certainly material. ■ On a sale of income property the representation was made that the "net spendable income" was $19,000 plus, whereas in point of fact the property was operating at a substantial loss. A more material misrepresentation can scarcely be imagined. The general rule is clear: on discovery of such a misrepresentation the buyer may rescind. The buyer has a reasonable time to make his discovery and rescind, which was accomplished here within 60 days. ■ We think the trial court was correct in concluding as a matter of law that rescission was timely and in instructing the jury to that effect.

### III

Undoubtedly, the foregoing rules of law would have been routinely applied except for the provision that buyer has "7 days from receipt to verify income and expenses." Receipt of what? If buyer fails "to verify" does he forfeit his general right to rescind the contract for material misrepresentation?

Osborne asserted the event that would start the running of the seven-day period was the signing of the contract. As the trial court observed, that explanation is patently incredible. If the parties really agreed that defendant had seven days from November 3 to verify figures, they could easily have said just that. We think it highly probable that either they did not agree on the provision and therefore it never became a binding term of the contract, or that the seven-day period would begin to run on the presentation by the seller to the buyer of an income and expense statement in auditible form suitable for verification.

Contracts must be given a reasonable interpretation, and, in the absence of factual controversy, interpretation of a contract involves an issue of law for initial resolution by the trial court, and thereafter, independently, by a reviewing court. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839].) Nothing in the contract involved here, or in the evidence produced at the trial, remotely suggests that the property had been sold without representations, or that the right to rescind for material misrepresentations had been waived, or that falsities in the offering and listing of the property became verities if not discovered and protested within seven days of some unspecified

event. The purchase of income property on any such terms staggers the imagination and is inherently incredible. For this reason we do not interpret the seven-day clause as derogating in any way from the general right of a buyer to timely rescind for material misrepresentation.

In our view a reasonable construction of the seven-day provision applies it to misrepresentations that are merely marginally material, or misrepresentations that may be genuinely ambiguous. For example, if the net spendable income had been 15 percent less than represented, or if a particular item of outgo had been accounted for as a capital improvement instead of an operating expense, then the seven-day provision might forestall later dispute about the full accuracy of information that had been disclosed. On this view, the provision is supplemental to the general entitlement of the buyer to truthful material representations connected with the contract, and in no way derogates or nullifies the general principle that authorizes rescission of a contract for gross and flagrant material misrepresentation of fact. Hence defendant was entitled to rescind the contract on discovery of the material misrepresentations made to him.

■ The remaining ground specified by the trial court for its grant of a new trial was exclusion of rebuttal evidence on value. But since defendant was entitled to rescind the contract as a matter of law, a directed verdict in his favor would have been proper, and the issue of damages became irrelevant.

The order granting a new trial is reversed, and the cause is remanded to the trial court with directions to enter judgment in favor of defendant.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied May 10, 1978.