146 F.3d 1184
 22 Employee Benefits Cas. 1430, 98 Cal. Daily
Op. Serv. 5375,
98 Daily Journal D.A.R. 7545,
98 Daily Journal D.A.R. 9892
SECURITY LIFE INSURANCE COMPANY OF AMERICA, a Minnesota
corporation, Plaintiff-Appellee,
v.
Garry L. MEYLING, Defendant-counter-claimant-Appellant.
 No. 97-15595.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 13, 1998.
Decided July 9, 1998.
As Amended on Denial of Rehearing and Suggestion for
Rehearing En Banc Sept. 14, 1998.
 
 Marilyn A. Monahan, Sheldon R. Emmer, Emmer & Graeber, A Law Corp., Los Angeles, California, for the plaintiff-appellee.
 K. Robert Foster, Neumiller & Beardslee, Stockton, California, for the defendant-counter-claimant-appellant.
 Appeal from the United States District Court for the Eastern District of California; William B. Shubb, District Judge, Presiding. D.C. No. CV-95-01463-WBS.
 Before: HUG, JR., Chief Judge, and FERNANDEZ and THOMAS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Garry Meyling appeals the district court's grant of summary judgment in favor of Security Life Insurance Company of America in Security's diversity action seeking to rescind its insurance contract with Meyling, its insured. Security sought rescission due to material misrepresentations in Meyling's insurance application. He failed to disclose his prior negative medical history. We reverse.
 
 BACKGROUND
 
 2
 Meyling is a co-owner, officer, and director of Hubbard, Krause & Meyling, Inc., a small company doing business as HKM Machine and Fabrication. In February 1993, HKM purchased health insurance from Security for its employees and their dependents, including Meyling. The parties do not dispute that the HKM insurance plan is an ERISA[1] plan, nor do they dispute that HKM is the plan administrator.
 
 
 3
 As part of Security's application process, each HKM employee including Meyling, was required to fill out an insurance application. The application asked the applicant to describe his medical history. In the five years prior to applying for coverage, Meyling had suffered and been treated for high blood pressure, back pain and back spasms, hyperventilation, and a panic disorder. However, on his application, Meyling falsely indicated that he had not been treated for or diagnosed with any of those illnesses.
 
 
 4
 Based on Meyling's representations of good health, Security issued a policy to HKM at a discounted initial premium. The parties agree that the difference in premiums initially charged would be at least $5,775, which came about because the premium was 15% below normal, rather than 20% above normal, as it should have been.
 
 
 5
 However, under the Security Life policy, premiums do not remain fixed. Rather, if new health information is received which would have altered the amount of premiums, the insured is retroactively charged so that the insured ultimately pays the same premium as if the correct information had been given in the application. Specifically, in a section labeled "Premium Changes Due to Misstatements," the Security Life policy provides that when misrepresentations are discovered:
 
 
 6
 There will be a charge to the Policyholder or refund from the Insurer to adjust for past premium payments. This charge or refund will be equal to the difference between: (i) premiums previously billed; and (ii) the premiums that, based on the most current data, should have been billed.
 
 
 7
 Aside from retroactive premium adjustment, the policy does not expressly provide Security Life any remedy for misstatements regarding health information. There is no provision for rescission, and the termination section does not include misrepresentation as a basis upon which to cancel the policy.
 
 
 8
 Although the policy does not make any reference to common law remedies for misrepresentation, it contained an incontestability clause providing that the policy could not be contested after two years from the date of issue except for non-payment of premiums. The policy also provided that:
 
 
 9
 All statements made by the insured employee in the absence of fraud are representations and not warranties. A statement made by the insured employee may be used to contest entitlement to insurance only if: (i) it is part of a written application; (ii) a copy of the application has been given to that person; and (iii) the insurance for which the statement was made has been in effect for less than two years during the life of the insured employee.
 
 
 10
 The policy identified the contract as being composed of (a) the policy; (b) the policyholder's application attached to the policy; (c) the individual applications of the insured persons, if any; and (d) the employer's written statements as approved by the insurer.
 
 
 11
 After Security issued the policy, it asked Meyling to review his medical history responses, and for the first time warned that failure to disclose accurate information could result in rescission. Meyling did not correct the misrepresentations on his application.
 
 
 12
 In November 1994, Meyling suffered an aneurysm in the wall of his heart. He spent approximately three and a half months in the hospital and accrued medical bills in the amount of $670,000. Based on its discovery that Meyling had misrepresented his health history in his insurance application, Security refused to pay Meyling's claim. Instead, it brought suit to rescind Meyling's insurance policy. Meyling counterclaimed for breach of contract and bad faith under California law, and filed an amended complaint stating those claims under ERISA.
 
 
 13
 In July 1996, Security filed two motions for summary judgment. The first argued that Meyling's state law claims were preempted by ERISA. That motion was granted and has not been appealed. The second motion asked the court to find as a matter of law that Security was entitled to rescission of the insurance contract based on material misrepresentations by Meyling. Meyling admitted the misrepresentations, but argued that under California Insurance Code sections 10700-10718.7 (hereafter sometimes referred to as AB 1672), insurance policies are not subject to rescission. The district court also granted Security's second motion. It found that provisions of California's Insurance Code which specifically permit rescission based on misrepresentations were not preempted by ERISA, that the provisions were not inconsistent with AB 1672, and that Security was entitled to rescission of its agreement with Meyling. Meyling appealed that determination.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 14
 The district court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332. We have jurisdiction under 28 U.S.C. § 1291.
 
 
 15
 We review de novo a district court's grant of summary judgment. Cisneros v. UNUM Life Ins. Co. of America, 134 F.3d 939, 942 (9th Cir.1998); Babikian v. Paul Revere Life Ins. Co., 63 F.3d 837, 839 (9th Cir.1995). " '[T]he district court's interpretation and application of ERISA provisions and its determination that ERISA preempts a state law,' " are also reviewed de novo. Babikian, 63 F.3d at 839 (citation omitted); see also Serrato v. John Hancock Life Ins. Co., 31 F.3d 882, 884 (9th Cir.1994) (" 'We also review de novo the district court's interpretation and application of ERISA provisions and its determination that ERISA preempts a state law.' ") (citation omitted).
 
 DISCUSSION
 
 16
 A. ERISA PREEMPTION of CALIFORNIA INSURANCE CODE §§ 331
 
 
 17
 , 359
 
 
 18
 , 10380
 
 
 19
 The district court based its grant of summary judgment in favor of Security on California Insurance Code sections 331, 359, and 10380, which allow an insurer to rescind an insurance contract when the insured has concealed or misrepresented material facts.[2] Meyling argues that these provisions are preempted by ERISA. We agree.
 
 
 20
 We have repeatedly emphasized that "ERISA contains one of the broadest preemption clauses ever enacted by Congress." See Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir.1990). Generally, ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). However, ERISA also contains a "savings clause" which provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance...." 29 U.S.C. § 1144(b)(2)(A). The district court concluded that although the provisions of the California Insurance Code at issue relate to an ERISA plan, the provisions are not preempted because they fall within ERISA's savings clause. We disagree with that conclusion.
 
 
 21
 Under the Supreme Court's decisions in Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740-44, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) and Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 48-49, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), we employ "a two-part test to determine when laws regulate insurance under ERISA's saving clause." Evans, 916 F.2d at 1439; see also Cisneros, 134 F.3d at 945; Serrato, 31 F.3d at 885. First, we ask whether the law fits a "common-sense understanding of insurance regulation." Cisneros, 134 F.3d at 945. Second, we consider three criteria "taken from case law interpreting the phrase 'business of insurance' under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-15.' " Id. Those criteria are "[f]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." Id. (italics in original). However, "the McCarran-Ferguson factors are simply relevant considerations or guideposts, not separate essential elements of a three-part test that must each be satisfied for a law to escape preemption." Id. at 946.
 
 
 22
 The Supreme Court's decision in Pilot Life informs our determination that California Insurance Code sections 331, 359, 10380 do not fit within a "common sense" understanding of insurance regulation. In Pilot Life, 481 U.S. at 48-51, 107 S.Ct. 1549, the Supreme Court considered whether Mississippi's law of bad faith was a state law that regulates insurance under ERISA's savings clause. The Court stated that:
 
 
 23
 [a] common-sense view of the word "regulate" would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry. Even though the Mississippi Supreme Court has identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law. Any breach of contract, and not merely breach of an insurance contract, may lead to liability for punitive damages under Mississippi law.
 
 
 24
 Id. at 50, 107 S.Ct. 1549. Following the Supreme Court's direction in Pilot Life, we have held that California's general laws of contract interpretation, even when directed at the insurance industry, are not laws that regulate insurance and are not saved from ERISA preemption. See Serrato, 31 F.3d at 886 (finding that a California decision that merely applied general rules of insurance contract interpretation did not regulate insurance and was not saved from preemption); Tingey v. Pixley-Richards West, Inc., 953 F.2d 1124, 1133 (9th Cir.1992) ("Like the Mississippi law against bad faith insurance settlement practices, the Arizona tort ... [at issue] 'arises from a breach of [a] duty ... implicit in all contracts....' Such a law ... is preempted under Pilot Life 's express authority.") (citations omitted); Evans, 916 F.2d at 1440 ("In Kanne, we held that state laws of insurance policy interpretation do not qualify for the saving clause exception and are preempted."); Kanne v. Connecticut General Life Ins. Co., 867 F.2d 489, 494 (9th Cir.1988) (finding that California law of contract interpretation is not saved under McCarran-Ferguson analysis nor is its unfair insurance practice law).
 
 
 25
 In Serrato, for example, we held that although in proper circumstances state case law regulating insurance may fall under ERISA's savings clause, a California insurance contract interpretation case was not saved because it represented a "decision that merely applie[d] general rules of insurance contract interpretation." 31 F.3d at 886. As such, it was not a law that regulated insurance. See id. In support of that conclusion, we cited many cases, including the Sixth Circuit's decision in International Resources, Inc. v. New York Life Ins. Co., 950 F.2d 294, 299 (6th Cir.1991).
 
 
 26
 In International Resources, the Sixth Circuit held that the Kentucky tort of bad faith insurance practices, which was limited to the insurance industry, was not protected by ERISA's savings clause. See id. at 299-300. Quoting language from Pilot Life, which emphasized that a law does not regulate insurance when it is firmly rooted in general contract or tort law, the Sixth Circuit concluded that "[t]he Supreme Court has taken a narrow view of the factors that shall be deemed 'integral' to insurance law...." Id. at 300.
 
 
 27
 More recently, the Sixth Circuit analyzed an issue almost identical to the one in the instant appeal. See Davies v. Centennial Life Ins. Co., 128 F.3d 934 (6th Cir.1997). In Davies, the Sixth Circuit considered an Ohio Insurance Code provision which permitted an insurer to rescind a policy on the basis of false statements made in the application process. Id. at 942. Although the provision was found in the insurance code, and, thus, appeared to be specifically directed at the insurance industry, "its roots [were] firmly planted in the general principles of Ohio contract law." Id. at 941. Therefore, the provision was not "specifically directed at the insurance industry, [but was] merely a codification of the general principles of contract law and fraudulent inducement." Id. at 942. Because those general principles do not specifically regulate insurance, spread risk, or control an integral part of the policy relationship, the court held that the provision did not come within ERISA's savings clause. See id. at 942-43; see also Tingle v. Pacific Mut. Ins. Co., 996 F.2d 105, 108-09 (5th Cir.1993) (finding that rescission provision in insurance code did not come within ERISA savings clause). Again, the Sixth Circuit was exactly right.
 
 
 28
 We, therefore, conclude that California Insurance Code sections 331, 359, and 10380 do not fit a common sense understanding of insurance regulation. Although the provisions are found in the Insurance Code, they do little more than codify long-standing principles of California contract law. See Reveles v. Toyota by the Bay, 57 Cal.App.4th 1139, 67 Cal.Rptr.2d 543, 551 (1997) ("It has long been recognized that a used vehicle buyer may rescind the sales contract where the seller fraudulently misrepresented the vehicle's condition...."); Osborne v. Cal-Am Financial Corp., 80 Cal.App.3d 259, 145 Cal.Rptr. 584, 589 (1978) ("Every contract is executed subject to implied legal conditions of good faith, which include the buyer's right to rescind within a reasonable time after discovery of the falsity of seller's material representations."); Wilke v. Coinway, Inc., 257 Cal.App.2d 126, 64 Cal.Rptr. 845, 854 (1967) (allowing rescission of a contract to purchase coin operated machines on the basis of fraudulent misrepresentations); Civille v. Bullis, 209 Cal.App.2d 134, 25 Cal.Rptr. 578, 581 (1962) (allowing rescission of a real estate contract on the basis of false representations). The provisions cannot be readily distinguished from California's common law of insurance contract interpretation. See Kanne, 867 F.2d at 494 (finding that insurance contract interpretation is "not 'specifically directed toward [the insurance] industry.' "). Like any other contract entered into on the basis of a material misrepresentation, insurance contracts can be rescinded. That is not the stuff that savings clause insurance regulation is made of.
 
 
 29
 Similarly, an application of the McCarran-Ferguson factors indicates that the rescission provisions do not regulate insurance. Again, under the insurance rescission sections, California, a code state, has merely codified a particular application of rescission law which is deeply rooted in the common law of contract remedies. The existence of the rescission remedy does not spread risk or affect the insurance policy relationship except to the extent that rescission could have those effects upon any contractual relationship. Moreover, the concept is surely not limited to contracts within the insurance industry. Thus, to the extent the district court's grant of summary judgment was dependent on its finding that California Insurance Code sections 331, 359, and 10380 were not preempted by ERISA, it was in error.
 
 
 30
 However, because we can affirm on any ground supported by the record, we must go on to determine whether rescission was precluded by AB 1672. We must also decide whether it was proper under federal common law. See United States v. Burnette, 698 F.2d 1038, 1048 (9th Cir.1983) (noting that we may affirm the district court on any basis fairly presented in record).
 
 B. AB 1672 and RESCISSION
 
 31
 The parties debate whether AB 1672 prohibits rescission. That statute established a comprehensive scheme for the issuance of health insurance to small employers. See Cal. Ins.Code §§ 10700-10718.7. The parties agree that Meyling's policy with Security was issued after the enactment of AB 1672, and that HKM falls within the Act's definition of small employer. The parties also agree that under AB 1672, Security could not reject issuance of the policy on the basis of any employee's prior health history.
 
 
 32
 Meyling contends that AB 1672 prohibits rescission of insurance contracts entered into under its authority. If that assertion were true, and if AB 1672 falls within ERISA's saving provision, the district court's grant of summary judgment would be reversed because rescission of Meyling's insurance coverage would be prohibited under California law. Although the parties assume that AB 1672 falls within ERISA's exception to preemption, it is not necessary to determine that question because nothing in the statute suggests that rescission is prohibited.
 
 
 33
 Initially, we emphasize that the express terms of AB 1672 do not prohibit the remedy of rescission. Because the rescission provisions were part of the Insurance Code prior to the enactment of AB 1672, under established principles of California statutory interpretation, we assume that the California Legislature was aware of the provisions when it enacted AB 1672. See Unzueta v. Ocean View School Dist., 6 Cal.App.4th 1689, 8 Cal.Rptr.2d 614, 618-19 (1992) (" 'The Legislature is presumed to know the existing law and have in mind its previous enactments when legislating on a particular subject.' "); see also Bailey v. Superior Court, 19 Cal.3d 970, 140 Cal.Rptr. 669, 568 P.2d 394, 398 n. 10 (1977). Although an insurance company may not initially exclude an eligible employee on the basis of his "actual or expected health condition," Cal. Ins.Code § 10707, that does not mean that it cannot rescind for fraud or misrepresentation. And although the legislature has specifically declared that the insurance company need not renew the health plan when there is "fraud or misrepresentation," Cal. Ins.Code § 10713(b), that, too, does not preclude rescission. Moreover, AB 1672 specifically provides that "[n]otwithstanding any other provision of law, no provision of this chapter shall be construed to limit the applicability of any other provision of the Insurance Code unless such provision is in conflict with the requirements of this chapter." Cal. Ins.Code § 10718.7. We do not see AB 1672 as an impediment to rescission because nothing in the statute prohibits rescission, and because the mere fact that a policy must issue does not inexorably require that a policy based on misrepresentations cannot be rescinded. See Unzueta, 8 Cal.Rptr.2d at 618 (" 'An intent that finds no expression in the words of the statute cannot be found to exist. The courts may not speculate that the legislature meant something other than what it said. Nor may they rewrite a statute to make it express an intention not expressed therein.' "). Thus, Security's ability to rescind its insurance agreement with Meyling will depend entirely on federal common law.[3] Therefore, we now turn to an analysis of that body of law.
 
 C. FEDERAL COMMON LAW and RESCISSION
 
 34
 Under ERISA, Congress has authorized the courts "to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in [the Act]." Peterson v. American Life & Health Ins. Co., 48 F.3d 404, 411 (9th Cir.1995). In that regard, we have held that "ERISA preemption does not mean that general principles of state law are irrelevant to interpretation of ERISA-governed insurance contracts." Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382, 386 (9th Cir.1994). On the contrary, courts are directed to formulate federal common law by considering both state law and governing federal policies. Id.
 
 
 35
 While we have never directly held that there is a right of rescission under ERISA for insurance contracts entered into under a false representation of health, it is clear that the remedy should exist. Seventy years ago, the Supreme Court stated that "[i]nsurance policies are traditionally contracts uberrimae fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option." Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 316, 48 S.Ct. 512, 72 L.Ed. 895 (1928). We need not moot whether uberrimae fidei itself still applies to ordinary insurance contracts because many federal courts facing insurance issues have identified a right of rescission. See, e.g., Davies, 128 F.3d at 943-44 (recognizing an insurer's right to rescind an insurance contract where the insured has made fraudulent or material misrepresentation in insurance application); Hauser v. Life General Sec. Ins. Co., 56 F.3d 1330, 1335 (11th Cir.1995) (assuming right of rescission exists under ERISA-created federal common law); Nash v. Trustees of Boston Univ., 946 F.2d 960, 966-67 (1st Cir.1991) (recognizing fraud in the inducement as defense under federal common law interpreting ERISA); Coots v. United Employers Fed'n, 865 F.Supp. 596, 603-04 (E.D.Mo.1994) (recognizing federal common law right of rescission under ERISA for false representations to an insurer); Negoski v. Country Life Ins. Co., 843 F.Supp. 372, 374-75 (N.D.Ill.1993) (assuming right of rescission on basis of material misrepresentation in insurance application). Thus, in accord with the policy of national uniformity, we recognize that ERISA must provide a rescission remedy when an insured makes material false representations regarding his health.
 
 
 36
 However, that general principle does not automatically lead to the conclusion that rescission of the insurance contract is an appropriate remedy in this case. Under traditional contract law, an agreement can be rescinded when it is entered into on the basis of a fraudulent or material misrepresentation. See Restatement (Second) of Contracts § 164 (1981).
 
 
 37
 The question of when a misrepresentation is "material" in the insurance context has been a matter of some debate. Although the California Supreme Court has not directly faced the issue, it has stated in dicta that materiality of a misrepresentation on an insurance application "is determined by the probable and reasonable effect that truthful disclosure would have had upon the insurer in determining the advantages of the proposed contract." Holz Rubber Co., Inc. v. American Star Ins. Co., 14 Cal.3d 45, 120 Cal.Rptr. 415, 533 P.2d 1055, 1064 (1975) (In Bank). The California Supreme Court explained that "[e]ssentially, we must decide whether the insurer was misled into accepting the risk or fixing the premiums of insurance." Id. 14 Cal.3d at 61 n. 16.
 
 
 38
 That view is consistent with the view of a majority of federal courts which have held that materiality is established when the insurer is misled into accepting the risk or in providing a discounted premium. See, e.g. Hays v. Jackson Nat'l Life Ins. Co., 105 F.3d 583, 590 (10th Cir.1997) (" 'If the only consequence of a fraudulent misrepresentation in a life insurance application is to reduce the amount paid under the policy, there is every incentive for applicants to lie.' "); New York Life Ins. Co. v. Johnson, 923 F.2d 279, 281 (3rd Cir.1991) ("A misrepresented fact is material if being disclosed to the insurer it would have caused it to refuse the risk altogether or to demand a higher premium."); Parker v. Prudential Ins. Co. of America, 900 F.2d 772, 778 (4th Cir.1990) (finding that insurance coverage could be denied where insured had misrepresented facts only to receive discounted premium).
 
 
 39
 Thus, we conclude that to establish materiality in the insurance context, the misstatements must have either affected insurability or the amount of premium paid by the insured. In essence, materiality is determined by the misrepresentation's effect on the insurer's informed acceptance of risk, i.e., would knowledge of the true facts have influenced the insurer in deciding whether to accept the risk or in assessing how much premium should be paid for undertaking the risk.
 
 
 40
 Thus, we reject Meyling's argument that Security cannot rescind his health coverage because the company was required to issue the HKM policy under AB 1672, regardless of his individual bad health. According to Meyling, a misrepresentation to an insurance company is not material unless it affects the company's willingness to enter into the agreement. As he sees it, a mere misrepresentation that would only result in an increased premium does not warrant rescission. We cannot accept that amoral view of promises and contracts. It runs counter to the majority of California and federal cases on the issue, and would foster fraud.
 
 
 41
 Having decided that a misrepresentation is material if it affects insurability or the amount of premium paid, we turn to the policy in question. Security does not argue that it would have denied Meyling coverage if it had been correctly informed as to his health history, so insurability is not at issue. Indeed, as Meyling points out, AB 1672 mandates coverage. Rather, Security's materiality allegations rest on the claim that a different premium would have been collected. However, like many group insurers, Security did not immutably fix its premium based on pre-issuance health disclosures. Instead, the policy established a premium structure which set an initial contract payment rate, but provided for automatic retroactive premium recalculation if there were "misstatements of essential data." Thus, under the policy when inaccuracies in health history are ascertained, the premium is mandatorily adjusted and retroactively applied, with the net result that the premium the insurer receives is identical to the one it would have charged had accurate information been reported.
 
 
 42
 In this respect, the policy language is mandatory, not permissive. The policy does not provide for Security to decide whether it will charge back or sue for rescission. The premium adjustment is automatically made without action on its part. Thus, under the Security policy, the total premium paid by the insured is not ultimately altered by misrepresentations because of the compulsory modification. Because the premium collected was unaffected by the misstatements, Security cannot establish materiality and is not entitled to common law rescission. In other words, having elected to contract for a mandatory self-adjusting remedy which provides full compensation, Security cannot avail itself of the harsh common law remedy of rescission.
 
 
 43
 This, of course, is not to say that Security forfeited its right to seek common law rescission; however, by inclusion of a mandatory premium adjustment, it cannot satisfy the preconditions for rescission because the misrepresentation did not materially affect the premium received.
 
 
 44
 This result makes sense in the context of the commercial transaction. Security, like many group insurers, anticipated application misstatements and crafted a concomitant remedy. The remedy it fashioned did not include rescission or termination; rather, it elected to provide an automatic compensation mechanism to ensure it received the correct premium. In short, it received the benefit of its bargain.
 
 
 45
 These situations are not uncommon, and will proliferate as underwriters increase their use of community-based actuarial ratings, and as state legislatures continue to pass laws mandating coverage and regulating premiums which may be charged small businesses. As the insurance industry alters its method of determining premiums, our concepts of materiality in the insurance context must also evolve.
 
 
 46
 This is not to endorse dissembling, but prevarication alone is legally insufficient to actuate rescission. If the contrary were true, a materiality requirement would have no meaning. Thus, when an insurer does not claim it altered its conduct in reliance on the misrepresentation and cannot demonstrate net economic consequences, it has not established materiality.
 
 
 47
 Accordingly, Security is not entitled to rescind its policy insuring Meyling. Thus, we reverse the judgment of the district court in favor of Security Life, and remand the remaining issues to the district court.
 
 
 48
 REVERSED AND REMANDED.
 
 
 49
 FERNANDEZ, Circuit Judge concurring in part and dissenting in part:
 
 
 50
 I agree with everything in the majority opinion except the last seven paragraphs, which conclude that Meyling gets to reap the benefits of his fraud.
 
 
 51
 I agree that Security Life did reserve the right to adjust the premium retroactively, but I cannot agree that it thereby gave up its right to rescind for egregious misrepresentations like the ones made by Meyling. In fact, Security Life did, in effect, reserve the right to contest entitlement to insurance benefits where there was fraud, and there surely was fraud here. The mere fact that it also reserved the right to change the premium retroactively should not affect that.
 
 
 52
 Were there any doubt that Security Life was not giving up its recission rights, that doubt should have been wiped away when it wrote to Meyling. It sent him his certificate booklet and a copy of his application. It then exhorted him to review the application and to "make certain all questions have been answered accurately and completely...." The letter continued: "If, upon second review, you determine some answers were not correct, please notify us in writing within ten (10) days of receipt of the certificate. FAILURE TO DISCLOSE ACCURATE INFORMATION MAY RESULT IN A DENIAL OF BENEFITS OR RESCISSION OF COVERAGE." But Meyling's misrepresentations were not due to a mere bevue. They were carefully thought out. He was not about to reveal his fraud at that point.
 
 
 53
 The result that Meyling now argues for hatches the very cockatrice that the Second Circuit warned against when it said that failing to allow rescission "would reward the practice of misrepresenting facts critical to the underwriter's task because the unscrupulous (or merely negligent) applicant 'would have everything to gain and nothing to lose' from making material misrepresentations in his application for insurance." Mutual Benefit Life Ins. v. JMR Electronics Corp., 848 F.2d 30, 34 (2nd Cir.1988). That court could have been speaking of Meyling himself when it said that a lying claimant could then "rest assured not only that he may demand full coverage should he survive the contestability period ..., but that even in the event of a contested claim, he would be entitled to the coverage that he might have contracted for had the necessary information been accurately disclosed at the onset." Id. I agree that "[the] law does not permit this anomalous result." Id.
 
 
 54
 As I see it, reading the policy and the law in Meyling's preferred way creates a strong incentive to defraud insurers. In fact, it leaves no legal (as opposed to moral) reason for anyone to give accurate health information to Security Life. I am unable to accept that result.
 
 
 55
 In sum, Meyling believes that if he had not been discovered he could have kept the benefits of a low premium, and now that he has been discovered the most that Security Life can do is exact the premium that it would have received if he had not made his misrepresentations. That is a peculiar view of how insurance works, and I see no sufficient reason to hold that his picaresque behavior must be rewarded in that manner. On the contrary, Security Life should be allowed to resile and to leave Meyling where he was before he induced it to enter into a contract with him.
 
 
 56
 Thus, I respectfully dissent from the portion of the majority opinion which allows Meyling to harvest the fruits of his fraud.
 
 
 
 [1]
 Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461
 
 
 [2]
 Section 331 provides "[c]oncealment, whether intentional or unintentional, entitles the injured party to rescind insurance." Cal. Ins.Code § 331. Section 359 states "[i]f a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false." Cal. Ins.Code § 359. Finally, section 10380 states that "[t]he falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery under the policy unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer." Cal. Ins.Code § 10380
 
 
 [3]
 Meyling's main argument in support of his theory that AB 1672 prevents rescission is based on his claim that the California Department of Insurance has so interpreted the statute. Meyling contends that under both federal and state law the interpretation of an agency charged with implementation of a statutory scheme is entitled to great weight. That is a fine general principle, but in this case there is no official agency interpretation. The California Department of Insurance has made that perfectly clear in correspondence which is part of the record in this case