Filed 6/9/15  Yeung v. State of Cal., Dept. of Transportation CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| WILLIAM YEUNG,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STATE OF CALIFORNIA DEPARTMENT OF TRANSPORTATION,<br><br>    Defendant and Respondent. | D065175<br><br><br>(Super. Ct. No. 37-2012-00092541) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Nana Gyamfi for Plaintiff and Appellant.

Jeanne Scherer, Jeffrey R. Benowitz, Glenn B. Mueller, John Frederick Smith and Elizabeth R. Feyzbakhsh for Defendant and Respondent.

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Plaintiff William Yeung appeals a judgment following a jury verdict in favor of defendant State of California, acting by and through the Department of Transportation

(Caltrans), in his action for wrongful termination of employment. On appeal, he contends the trial court erred by denying his motion to exclude evidence untimely produced by Caltrans, denying his motion for a continuance of the trial based on Caltrans's discovery violations, and denying his motion for new trial based on juror misconduct, surprise, and newly discovered evidence.

## FACTUAL AND PROCEDURAL BACKGROUND

Apparently from 1998 to 2011, Yeung was employed by Caltrans as a civil engineer. After three adverse actions for poor work performance, Caltrans terminated his employment. Yeung filed an action against Caltrans alleging causes of action for unlawful discrimination, harassment, and retaliation based on race, national origin, religion and/or perceived sexual orientation. Following a two-week trial, the jury returned a defense verdict, rejecting all of Yeung's claims, and the trial court entered judgment on the jury's verdict. The court denied Yeung's motion for new trial. Yeung timely filed a notice of appeal.

## DISCUSSION

### I

*Yeung's Pretrial Motion to Exclude Untimely Produced Evidence*

Yeung contends the trial court abused its discretion by denying in part his pretrial motion to exclude certain evidence that Caltrans untimely produced and disclosed to him. He argues the court should have barred Caltrans from all use or reference to that evidence and should not have allowed its use in impeaching his testimony.

2

A

Yeung filed a pretrial motion seeking an order precluding Caltrans from introducing or referring to certain evidence it had untimely produced, including 445 pages of documents produced by Caltrans on July 10, 2013, and three computer hard drives produced by Caltrans on July 24, 2013. He argued the introduction of that previously undisclosed evidence would "incurably" prejudice him because it would be "virtually impossible" at that stage of the litigation to adequately respond to it. Caltrans opposed the motion, conceding it had untimely produced the three hard drives but arguing it should nevertheless be allowed to use them to impeach Yeung.

On August 20, 2013, the first day of trial, the trial court found Caltrans did not timely produce the hard drives by the discovery cutoff date of July 19, 2013. It sanctioned Caltrans for its late production of the hard drives by precluding it from using documents from the hard drives in its case-in-chief. However, the court noted its ruling did not preclude Caltrans from using the documents on the hard drives for impeachment. In addition, the court denied Yeung's request to exclude the 445 pages of documents, finding Yeung had not filed a motion to compel regarding those documents and also that Caltrans showed he was not prejudiced by its July 10, 2013, production of those documents.

B

A trial court exercises discretion when it chooses among various options for imposing a sanction on a party for discovery violations. (*Miranda v. 21st Century Ins. Co.* (2004) 117 Cal.App.4th 913, 928.) Discovery sanctions should be appropriate to the

3

violation and should not exceed what is required to protect the interests of the party entitled to discovery. (*Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 35.) "The court's discretion to impose discovery sanctions is broad, subject to reversal only for manifest abuse exceeding the bounds of reason." (*American Home Assurance Co. v. Société Commerciale Toutélectric* (2002) 104 Cal.App.4th 406, 435 (*American Home*).) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted (*Haraguchi*).)

C

Based on our review of the record, we conclude the trial court did not abuse its discretion in sanctioning Caltrans for its discovery abuse by precluding it from using the untimely-produced hard drives in its case-in-chief, but nevertheless allowing it to use documents from those hard drives to impeach Yeung. The court presumably considered various options for sanctioning Caltrans for producing the hard drives after the discovery cutoff date and exercised its discretion to preclude their use in Caltrans's case-in-chief, but allow their use in impeaching Yeung. In so doing, the court did not abuse its discretion. Its chosen sanction was neither arbitrary, capricious, nor beyond reason. (*American Home*, *supra*, 104 Cal.App.4th at p. 435; *Haraguchi*, *supra*, 43 Cal.4th at pp. 711-712.) Yeung has not carried his burden on appeal to persuade us otherwise.

Furthermore, Yeung has not shown the court's ruling was prejudicial to him. Yeung testified he believed his supervisor had surreptitiously installed a "beta" version of Microsoft Word on his work computer, thereby causing problems with his work product. Based on that testimony, Caltrans presented impeachment evidence showing no such software had been installed on Yeung's computer. However, Yeung does not explain on appeal how he probably would have obtained a more favorable verdict had the court excluded that impeachment evidence. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) To the extent Yeung also argues he did not have sufficient time to review the hard drives before trial, we believe the three-and-one-half-week period before trial should have been adequate for him to review them and, in any event, he does not show any prejudice from the shortened time for their review.

We further conclude the trial court did not abuse its discretion by denying Yeung's motion to exclude the 445 pages of documents. The court properly considered the fact that Yeung had not filed a motion to compel production of those documents and presumably considered the fact they were produced nine days before the discovery cutoff date. By denying Yeung's motion to exclude those documents, the court did not abuse its discretion. Its ruling was neither arbitrary, capricious, nor beyond reason. (*American Home*, *supra*, 104 Cal.App.4th at p. 435; *Haraguchi*, *supra*, 43 Cal.4th at pp. 711-712.) Yeung has not carried his burden on appeal to persuade us otherwise. He also has not carried his burden on appeal to show the July 10, 2013, production of those documents was prejudicial to him (i.e., it is reasonably probable he would have obtained a more

5

favorable result had Caltrans disclosed those documents earlier). (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

II

*Denial of Motion for Continuance of Trial*

Yeung contends the trial court abused its discretion by denying his motion for a continuance of the trial based on Caltrans's discovery violations. He argues the court should have granted his request for a continuance based on Caltrans's "dump" of the 445 pages of documents and three hard drives shortly before trial.

A

At the hearing on Yeung's motion to exclude the 445 pages of documents and three hard drives, Yeung argued their late production did not allow him time to take depositions and perform other trial preparation to respond to or use that evidence. The trial court asked Yeung whether he sought a continuance of the trial based on Caltrans's late production of the hard drives. He replied he was if the court was going to allow Caltrans to use the evidence. Caltrans opposed Yeung's request for a continuance of the trial, noting there was no need for it because it would use the hard drives solely for impeachment and also there was no surprise because Yeung should have already been aware of the documents on the hard drives. The court noted the trial had already been continued once. Finding there was no good cause shown for a continuance of the trial, the court denied the motion.

B

California Rules of Court, rule 3.1332,[1] provides that assigned trial dates are firm and continuances of trials are disfavored. A party seeking a continuance of a trial must request a continuance by a noticed motion or ex parte application with supporting declarations "as soon as reasonably practical once the necessity for the continuance is discovered." (Rule 3.1332(b).) A "court may grant a continuance only on an affirmative showing of good cause requiring the continuance." (Rule 3.1332(c).) Factors that a court may consider in ruling on a motion for continuance include: (1) the proximity of the trial date; (2) whether there have been any previous continuances; (3) the prejudice the parties or witnesses will suffer as the result of a continuance; (4) whether the interests of justice are best served by a continuance or by trial of the matter; and (5) any other relevant factor. (Rule 3.1332(d).)

"The decision to grant or deny a continuance is committed to the sound discretion of the trial court. [Citation.] The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court. [Citation.] A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record. [Citation.] The burden rests on the complaining party to demonstrate from the record that such an abuse has occurred." (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984-985.)

---

[1]     All rule references are to the California Rules of Court.

7

C

Based on our review of the record, we conclude the trial court did not abuse its discretion by denying Yeung's motion for continuance of the trial. Yeung had possession of the hard drives and 445 pages of documents more than three weeks before the scheduled August 20, 2013, trial date, but did not make a motion for continuance until the morning of the first day of trial. Furthermore, he did not make the motion in writing with supporting declarations, as required by rule 3.1332(b). The trial court also could reasonably find Yeung had not shown good cause for a continuance. He did not make his motion until the first day of trial, showing the very close proximity of the motion to the trial. There also had been a previous continuance of the trial. Furthermore, the parties expected to, and did, call over 20 witnesses to testify over a two-week period. The court could reasonably find Caltrans and the many witnesses would be prejudiced by a continuance at such a late date. Finally, the court could reasonably conclude Yeung was not prejudiced by the denial of a continuance because he had the hard drives and 445 pages of documents for over three weeks before trial, which it could have concluded was adequate for him to review them and otherwise prepare for trial. Weighing those factors, the court reasonably found Yeung had not shown good cause and it did not abuse its discretion by denying his motion for a continuance. (*Forthmann v. Boyer*, *supra*, 97 Cal.App.4th at pp. 984-985.) Yeung has not carried his burden on appeal to persuade us otherwise.

### III

*Denial of Motion for New Trial*

Yeung contends the trial court abused its discretion by denying his motion for new trial. He argues the court should have granted his motion for new trial based on juror misconduct, surprise, and newly discovered evidence.

### A

In his motion for new trial, which he filed in propria persona after dismissing his trial counsel, Yeung asserted there was juror misconduct when, during a recess in the trial, defense counsel purportedly had a lengthy conversation with juror Layla Fockaert in the vestibule between the courtroom and the hallway. In support of that assertion, he submitted the declaration of Leonard Buckmaster, one of the witnesses he called to testify at trial, who stated:

> "2. I arrived at the Superior Court . . . and waited outside the courtroom for the trial to resume after lunch break.

> "3. I was seated on the benches located outside of the courtroom and observed Juror Layla [Fockaert] approach Caltrans Attorney [Heidi] Wierman to engage her in conversation. They . . . then immediately went into the vestibule between the public waiting area and the courtroom. I observed [Fockaert and Wierman] in the vestibule engaged in conversation for approximately 2 to 3 minutes until they returned from the vestibule into the public waiting area with the courtroom bailiff."

Yeung also submitted his own declaration, stating he did not have any knowledge of any juror communicating with defense counsel. He also submitted declarations from his two trial counsel, Robert Garcia, Jr., and Jeffrey McIntyre, both of whom stated they did not

9

have any knowledge of any communication between any juror and defense counsel during trial.

Yeung also argued he should be granted a new trial on the grounds of surprise and newly discovered evidence, asserting Caltrans's untimely production of the hard drives surprised him and prevented him from adequately examining them to refute the testimony of Caltrans's witness, Victor Nava, that the beta version of Microsoft Word had not been installed on his computer. In support of that argument, Yeung submitted a declaration of Dan Byrnes, stating he provided computer services to Yeung, examined the hard drives, and determined certain documents thereon were created from MS Office Word 2007.

Caltrans opposed Yeung's motion for new trial, arguing he had not shown there was any juror misconduct and, in any event, should have brought it to the court's attention before the jury returned its verdict. In support of its opposition, Caltrans submitted the declaration of juror Fockaert, stating in part:

> "3. At no time during the <u>Yeung</u> trial did I approach either of the attorneys for [Caltrans] and engage in any conversation whatsoever.
>
> "4. At no time did I go into the 'vestibule' between the public area and the courtroom with Ms. Wierman or Ms. Feyzbakhsh.
>
> "5. At no time during or after the <u>Yeung</u> trial did I speak with Ms. Wierman or Ms. Feyzbakhsh in the 'vestibule.'
>
> "6. At . . . no time during or after the <u>Yeung</u> trial did I speak to <u>any</u> attorney involved in the case. . . ."

Caltrans also submitted declarations of both of its trial counsel, stating they did not speak with any juror or go into the vestibule with any juror during trial.

10

Regarding Yeung's assertions of surprise and newly discovered evidence, Caltrans argued Byrnes's declaration was not credible or admissible as expert opinion because it did not set forth a foundation for his expertise in computer forensics and he did not indicate what metadata or specific documents he extracted from the hard drives. Furthermore, it argued Yeung did not show that forensic analysis could not have been done before trial. Also, it argued Yeung had not shown he was prejudiced by the untimely production of the hard drives (i.e., it is reasonably probable he would have obtained a more favorable result had the hard drives been timely produced).

The trial court denied Yeung's motion for new trial. Regarding his assertion of juror misconduct, the court found the declarations submitted by Caltrans were credible in denying that no conversation in the vestibule occurred between Fockaert and Wierman. The court implicitly found Buckmaster's declaration, submitted by Yeung, to be not credible. It noted his declaration was silent as to when Buckmaster brought the alleged improper contact to Yeung's attention and it did not explain how he identified Fockaert by name as opposed to other female jurors. Regarding Yeung's assertions of surprise and newly discovered evidence, the court found Byrnes's declaration was inadmissible, but, in any event, it believed its ruling allowing Caltrans to use the hard drives only for impeachment was correct, its denial of Yeung's motion for continuance was correct, and there would not have been a different outcome at trial had the hard drive impeachment evidence been excluded (i.e., Yeung was not prejudiced). The court further found Yeung had adequate time before or during trial to have hired a computer expert to examine the

11

hard drives.  The court concluded the trial was a credibility contest and the jury "got this one right," noting the preponderance of the evidence favored a defense verdict.

B

Code of Civil Procedure section 657 provides that a verdict may be vacated and a new trial granted on a motion therefor on certain grounds materially affecting the substantial rights of a party, including misconduct of the jury, surprise, and newly discovered evidence.  A trial court has broad discretion in ruling on a motion for new trial and its exercise of that discretion is given great deference on appeal.  (*Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1160; *City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871-872.)  In reviewing an order denying a motion for new trial, we review the entire record and make an independent determination whether any asserted error was prejudicial.  (*Plancarte v. Guardsmark* (2004) 118 Cal.App.4th 640, 645 (*Plancarte*); *Sherman*, at pp. 1160-1161.)  Absent prejudicial error, there is no discretion to grant a new trial.  (Cal. Const., art. VI, § 13; *Osborne v. Cal-Am Financial Corp.* (1978) 80 Cal.App.3d 259, 265-266.)

"In ruling on a request for a new trial based on jury misconduct, the trial court must undertake a three-step inquiry.  [Citation.]  First, it must determine whether the affidavits supporting the motion are admissible.  [Citation.]  If the evidence is admissible, the trial court must determine whether the facts establish misconduct.  [Citation.]  Lastly, assuming misconduct, the trial court must determine whether the misconduct was prejudicial."  (*People v. Dorsey* (1995) 34 Cal.App.4th 694, 703-704.)

12

To grant a motion for new trial based on surprise, the moving party must not have been able to prevent the surprise by the exercise of ordinary prudence and the surprise must have detrimentally impacted, or prejudiced, that party. (*McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 305.) Similarly, a party seeking a new trial based on newly discovered evidence must show the evidence is newly discovered, he or she exercised reasonable diligence in discovering and producing it, and it is material to the party's case. (*Plancarte*, *supra*, 118 Cal.App.4th at p. 646.)

C

Based on our review of the record, we conclude the trial court did not abuse its discretion by denying Yeung's motion for new trial. Regarding his assertion of juror misconduct, assuming arguendo Buckmaster's declaration was admissible, our review of the declarations submitted by the parties shows the trial court correctly found Yeung had not shown that any juror misconduct had, in fact, occurred. The parties allegedly involved in the vestibule conversation, Fockaert and Wierman, both denied that a conversation occurred. As an officer of the court, Wierman has an obligation to be truthful and therefore her declaration warrants a presumption of truthfulness. Furthermore, as the trial court noted, Buckmaster's declaration was very short on details regarding his ability to distinguish Fockaert from the other female jurors and identify her by name, especially since he testified at trial for only five minutes. Because Yeung did not carry his burden to prove misconduct occurred and that misconduct was prejudicial, the trial court properly denied his motion for new trial to the extent it was based on juror misconduct. (*People v. Dorsey*, *supra*, 34 Cal.App.4th at pp. 703-704.)

13

Regarding Yeung's assertion of surprise, the trial court properly found he was not unduly surprised by Caltrans's untimely production of the hard drives more than three weeks before trial. The court reasonably found Yeung had adequate time and opportunity to obtain a computer expert to examine those hard drives during the five-week period from the date of Caltrans's production and the last day of trial. Yeung does not show he could not, with reasonable diligence, have obtained such an expert. Furthermore, Yeung has not shown he was prejudiced by that surprise (i.e., it is reasonably probable he would have obtained a more favorable verdict had the hard drives been timely produced). Therefore, the trial court properly denied his motion for new trial to the extent it was based on surprise. (*McCoy v. Pacific Maritime Assn.*, *supra*, 216 Cal.App.4th at p. 305.)

Finally, regarding Yeung's assertion of newly discovered evidence, the trial court properly found Yeung had not shown he exercised reasonable diligence in discovering and producing the purported newly discovered evidence (e.g., Byrnes's expert opinion) because he could have obtained that new evidence during the five weeks after Caltrans's production of the hard drives until the last day of trial. Furthermore, Yeung has not shown that new evidence was material to his case and it is reasonably probable he would have obtained a more favorable verdict had it been admitted at trial. The trial court properly denied Yeung's motion for new trial based on newly discovered evidence. (*Plancarte*, *supra*, 118 Cal.App.4th at p. 646.) Therefore, we conclude Yeung has not carried his burden on appeal to show the trial court abused its discretion by denying his motion for new trial on grounds of juror misconduct, surprise, and newly discovered

14

evidence.  (*Plancarte,* at p. 645; *Sherman v. Kinetic Concepts, Inc.*, *supra*, 67 Cal.App.4th at pp. 1160-1161.)

## DISPOSITION

The judgment is affirmed.  Caltrans is entitled to costs on appeal.

McDONALD, J.

WE CONCUR:

HALLER, Acting P. J.

IRION, J.

15